**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **DAVID WEBB,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:08-cv-842-CW-PMW** |
| **CLAIMETRICS MANAGEMENT, LLC;** **EXPRESS SERVICES, INC.;** **WORKCARE NORTH, LLC;** **PERFORMANCE REHAB** **CLINIC–SALT LAKE, LLC; DAVIS** **ORTHOPEDICS & SPORTS MEDICINE,** | **District Judge Clark Waddoups** |
| **Defendants.** | **Magistrate Judge Paul M. Warner** |

District Judge Clark Waddoups referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Before the court are several motions to dismiss.  Express Services, Inc. ("Express"), Claimetrics Management, LLC ("Claimetrics"), and Davis Orthopedics & Sports Medicine ("Davis") have each filed motions to dismiss Plaintiff's original complaint.[2]  In addition, Express, Claimetrics, Davis, and Performance Rehab Clinic–Salt Lake, LLC ("Performance") have each filed motions to dismiss Plaintiff's amended complaint.[3]  Also

---

[1]  *See* docket no. 32.

[2]  *See* docket nos. 7, 9, 17.

[3]  *See* docket nos. 39, 41, 53.

before the court are Plaintiff's motion for default judgment,[4] motion to appoint counsel,[5] and motion for service of process.[6]  The court has carefully reviewed the parties' written submissions on all of the above-referenced motions.  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).

At the outset, the court notes that Plaintiff has been permitted to proceed in forma pauperis ("IFP") in this case under 28 U.S.C. § 1915 ("IFP statute").[7]  Accordingly, to the extent necessary, the court will address the sufficiency of Plaintiff's complaint under the authority of the IFP statute.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  The court also recognizes that Plaintiff is proceeding pro se in this case.  Consequently, the court will construe his pleadings and other submissions liberally.  *See, e.g.*, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

## FACTUAL BACKGROUND

According to Plaintiff's original complaint and amended complaint, he suffered a work-related injury in April 2007, for which he received various forms of medical treatment.  All of Plaintiff's claims and allegations in this case are based on events related to that medical

---

[4]  *See* docket no. 4.

[5]  *See* docket no. 30.

[6]  *See* docket no. 37.

[7]  *See* docket nos. 1, 2.

treatment.  Although Plaintiff's complaints do not make it entirely clear, it appears that Express

and Claimetrics had some administrative involvement with insurance or workers' compensation

claims related to Plaintiff's medical treatment.  It also appears that Davis, Performance, and

Workcare North, LLC ("Workcare") provided Plaintiff with the medical treatment for his injury.

In his jurisdictional allegations, Plaintiff asserts that this court has subject matter

jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of

citizenship).  With respect to federal question jurisdiction, Plaintiff's asserts only one claim that

arguably presents a federal question.  Plaintiff alleges that Claimetrics violated federal law

"regarding the interception of communication" contained in 18 U.S.C. §§ 2510-2522.[8]  The

remainder of the claims in Plaintiff's complaints present state-law causes of action, including

claims for physical pain and suffering, medical malpractice, defamation, intentional infliction of

emotional distress, and claims under several state statutes.

With respect to diversity jurisdiction, Plaintiff alleges that he is a citizen of Hawaii;

Express and Claimetrics are business entities in Oklahoma; WorkCare and Performance are

business entities in Utah; and Davis is a business entity in Tennessee.  However, in a

supplemental memorandum submitted to the court,[9] Express and Claimetrics assert that Plaintiff

has made allegations concerning diversity jurisdiction in this case that are inconsistent with

allegations he has made in a case currently pending in the United States District Court for the

---

[8] Docket no. 36 at 5.

[9] *See* docket no. 68.

3

District of Hawaii (the "Hawaii Case").  In support of that assertion, Express and Claimetrics

have attached to their supplemental memorandum two pleadings that Plaintiff filed in the Hawaii

Case.  In those pleadings, which were filed in March 2009, Plaintiff asserts that the court

presiding over the Hawaii Case should not consider his Hawaii citizenship for purposes of

diversity jurisdiction.  Instead, Plaintiff asserts that the court should consider his residence in

Utah since February 2006.  To that end, Plaintiff indicates that he is a Hawaii citizen "based

solely on his [Hawaii driver] license still being valid" and that he "has not been a resident of

Hawaii since leaving on 04 FEB 2006."[10]  Plaintiff did not respond to the supplemental

memorandum filed by Express and Claimetrics.

## PROCEDURAL BACKGROUND

Plaintiff's original complaint was filed on October 31, 2008.[11]  On November 17, 2008,

Plaintiff filed a motion for default judgment,[12] even though no proof of service had been filed

with the court as required by rule 4 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P.

4(*l*).

Later in November 2008, Express and Claimetrics each filed a motion to dismiss

Plaintiff's original complaint[13] and a memorandum in opposition to Plaintiff's motion for default

---

[10]  *Id*., Exhibit A at 2, Exhibit B at 2.

[11]  *See* docket no. 3.

[12]  *See* docket no. 4.

[13]  *See* docket nos. 7, 9.

4

judgment.[14]  Although Plaintiff did not respond to either of those motions to dismiss, he did file a

motion for service of process on November 25, 2008.[15]

In December 2008, Davis filed a motion to dismiss Plaintiff's complaint.[16]  Plaintiff filed

a formal response to that motion,[17] and Davis later filed its reply.[18]  Also in December 2008,

Express and Claimetrics each filed a response to Plaintiff's motion for service of process.[19]

Davis later filed a notice of joinder in those responses to Plaintiff's motion.[20]

In January 2009, Plaintiff filed a motion to appoint counsel[21] and an amended motion for

service of process.[22]  Later that same month, Plaintiff filed yet another amended motion for

service of process.[23]  In addition, and without first obtaining leave of court, *see* Fed. R. Civ. P.

15(a), Plaintiff filed an amended complaint.[24]

---

[14]  *See* docket nos. 15-16.

[15]  *See* docket no. 12.

[16]  *See* docket no. 17.

[17]  *See* docket no. 23.

[18]  *See* docket no. 24.

[19]  *See* docket nos. 21-22.

[20]  *See* docket no. 38.

[21]  *See* docket no. 30.

[22]  *See* docket no. 35.

[23]  *See* docket no. 37.

[24]  *See* docket no. 36.

In February 2009, Express and Claimetrics each filed a motion to dismiss Plaintiff's amended complaint.[25]  In March 2009, Performance also filed a motion to dismiss Plaintiff's amended complaint.[26]  Plaintiff responded to Performance's motion to dismiss,[27] but did not respond to the motions to dismiss filed by Express and Claimetrics.  Performance later filed its reply.[28]

In March 2009, Express and Claimetrics filed their supplemental memorandum in support of their motions to dismiss.[29]  In May 2009, Davis filed a motion for joinder in the arguments presented in the motion to dismiss Plaintiff's amended complaint filed by Express.[30]  The court recently granted that motion for joinder.[31]

Although the defendants named in Plaintiff's complaint have not been properly served with a summons and a copy of the complaint, all of those named defendants have filed a responsive pleading, with the sole exception of WorkCare.

---

[25]  *See* docket nos. 39, 41.

[26]  *See* docket no. 53.

[27]  *See* docket no. 62.

[28]  *See* docket no. 57.

[29]  *See* docket no. 68.

[30]  *See* docket no. 69.

[31]  *See* docket no. 71.

<u>**ANALYSIS**</u>

First, the court will address Plaintiff's motion for default judgment.  Second, the court will address Plaintiff's motion for appointment of counsel.  Third, the court will address the motions to dismiss Plaintiff's original complaint and the motions to dismiss Plaintiff's amended complaint filed by Express, Claimetrics, Davis, and Performance.  Fourth, because Plaintiff is proceeding IFP, the court will address the sufficiency of Plaintiff's complaint under the authority of the IFP statute.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  Fifth, the court will address Plaintiff's allegations with respect to diversity jurisdiction.  Finally, the court will address Plaintiff's motion for service of process.

## I.  Motion for Default Judgment

Less than a month after his original complaint was filed, and notwithstanding the fact that none of the parties named as defendants had been properly served with a summons and a copy of the complaint, Plaintiff filed a motion for default judgment.  A defendant named in a complaint in a civil case has no duty to answer or otherwise respond to the complaint until he or she is properly served with a summons and a copy of the complaint.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i) (providing that a defendant must serve an answer or responsive pleading "within 20 days after being served with the summons and complaint").  Accordingly, any entry of default prior to service is improper.  *See* Fed. R. Civ. P. 55(a) (providing that default must be entered when a party against whom a judgment is sought "has failed to plead or otherwise defend").

In this case, the parties named as defendants in Plaintiff's original complaint have not been properly served.  Consequently, those parties had no duty to answer or otherwise respond to

7

the original complaint and entry of default against them would be improper.  Accordingly,

Plaintiff's motion for default judgment should be denied.

## II.  Motion for Appointment of Counsel

As noted above, Plaintiff has filed a motion for appointment of counsel.  "The

appointment of counsel in a civil case is left to the sound discretion of the district court."

*Shabazz v. Askins*, 14 F.3d 533, 535 (10th Cir. 1994).  Although "[t]here is no constitutional right

to appointed counsel in a civil case," *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1988) (per

curiam), the court may appoint an attorney to represent a litigant who is unable to afford counsel.

*See* 28 U.S.C. § 1915(e)(1).  When deciding whether to appoint counsel, the court must consider

certain factors, "including the merits of the litigant's claims, the nature of the factual issues

raised in the claims, the litigant's ability to present his claims, and the complexity of the legal

issues raised by the claims."  *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)

(quotations and citations omitted).

The court turns to considering those factors in this case.  First, the merits of Plaintiff's

claims will be addressed in subsequent sections of this Report and Recommendation.  In those

sections, the court will conclude that Plaintiff's complaint fails to state any claims upon which

relief can be granted.  Second, concerning Plaintiff's ability to present his claims, there is no

indication that he is incapacitated or unable to pursue this case adequately.  Finally, with respect

to the complexity of this case, the court has determined that the factual and legal issues raised by

Plaintiff's complaint do not appear to be complicated or difficult to explain.  Further, at this stage

of Plaintiff's case, the court is concerned only with the sufficiency of Plaintiff's allegations, and

the court does not believe that appointed counsel would materially assist Plaintiff in describing the facts surrounding his alleged injuries. *See, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury"). For these reasons, Plaintiff's motion for appointment of counsel should be denied.

### III. Motions to Dismiss

In the motions to dismiss before the court, Express, Claimetrics, Davis, and Performance (collectively, the "Moving Parties") all argue that Plaintiff's original complaint and amended complaint should be dismissed for: (A) insufficient process and insufficient service of process; (B) lack of subject matter jurisdiction; and (C) failure to state claims upon which relief can be granted. The court will address those arguments in turn.

### A. Process and Service

The Moving Parties argue that Plaintiff failed to obtain sufficient process because he failed to obtain a summons. *See* Fed. R. Civ. P. 12(b)(4). The Moving Parties also argue that Plaintiff failed to properly serve process. *See* Fed. R. Civ. P. 12(b)(5). While those arguments may be correct, they do not support dismissal of Plaintiff's complaint.

When a plaintiff is allowed to proceed under the IFP statute, he is not required to perform any duties related to the issuance and service of process. Instead, the IFP statute provides that "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." 28 U.S.C. § 1915(d). At the same time, however, the IFP statute allows the court to screen the complaint prior to issuing and serving process on the named defendants. *See id.* § 1915(e)(2). If

that screening reveals that the complaint has merit, the court will order service of process.  *See id*. § 1915(d), (e)(2).  On the other hand, the court is required to dismiss the complaint if the screening process reveals that the plaintiff's allegation of poverty is untrue, the complaint is frivolous or malicious, the complaint fails to state claims on which relief may be granted, or the complaint seeks relief from a defendant who is immune from the requested relief.  *See id*. § 1915(e)(2).

Because it is the court, not Plaintiff, that is responsible for the issuance and service of process in this case, *see id*. § 1915(d), the Moving Parties' arguments with respect to Plaintiff's failure to properly obtain or serve process must fail.  Moreover, when the various motions to dismiss were filed, the court had not yet completed its screening of Plaintiff complaint under the IFP statute and, consequently, had not made a determination about whether process should be served in this case.

**B.  Subject Matter Jurisdiction**

The Moving Parties also argue that Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  As noted previously, Plaintiff asserts that this court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship).  With respect to federal question jurisdiction, Plaintiff's asserts only one claim that arguably presents a federal question.  Plaintiff alleges that Claimetrics violated federal law "regarding the interception of communication" contained in 18 U.S.C.

§§ 2510-2522.[32]  The remainder of the claims in Plaintiff's complaints present state-law causes of action, including claims for physical pain and suffering, medical malpractice, defamation, intentional infliction of emotional distress, and claims under several state statutes.

Although the federal statutes Plaintiff relies upon are located in the portion of the United States Code governing crimes and criminal procedure, one of the statutes does provide for a private right of action.  *See* 18 U.S.C. § 2520.  Accordingly, the court is satisfied that Plaintiff has, at least arguably, presented a federal question for the court's consideration.  In addition, and in the interests of judicial economy, the court should exercise supplemental jurisdiction over the remainder of Plaintiff's claims.  *See* 28 U.S.C. § 1367(a).

### C.  Failure to State a Claim

Finally, the Moving Parties argue that Plaintiff's original complaint and amended complaint should be dismissed for failure to state claims on which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under rule 12(b)(6), the court "look[s] for plausibility in th[e] complaint."  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quotations and citations omitted) (second alteration in original).  More specifically, the court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief.  Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (other quotations and citation

---

[32]  Docket no. 36 at 5.

omitted) (second and third alterations in original).  The court will address each motion to dismiss in turn.

## 1.  Express

The court's review of Plaintiff's original complaint and amended complaint reveals that he is asserting claims against Express for defamation and intentional infliction of emotional distress, both of which are governed by Utah law.  Express argues that both claims should be dismissed under rule 12(b)(6).

### a.  Defamation

Express argues that Plaintiff has failed to state a claim for defamation.  "Defamation is the act of harming the reputation of another by making a false statement to a third person." *Jensen v. Sawyers*, 130 P.3d 325, 333 (Utah 2005).  To state a claim for defamation under Utah law, a plaintiff must establish that the defendant "published the statements concerning him[;] that the statements were false, defamatory, and not subject to any privilege[;] that the statements were published with the requisite degree of fault[;] and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007-08 (Utah 1994) (footnotes omitted).  "Under Utah law, a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." *Id.* at 1008.  "A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff." *Cox v. Hatch*, 761 P.2d 556, 561 (Utah 1988).

In this case, Plaintiff alleges that someone at Express defamed him by "alleging sexual harassment to" someone at Claimetrics, causing him to suffer "mental [and] emotional distress."[33]  More specifically, Plaintiff alleges that someone at Express alleged "sexual harassment throughout the business and legal communities within Utah" and that Express communicated the same information to someone at Claimetrics, who then communicated with the Utah Labor Commission concerning Plaintiff's claim for workers' compensation benefits.[34]

Express argues that under Utah law, Plaintiff must set forth facts establishing that (1) Express published statements concerning Plaintiff; (2) the statements were false, defamatory, and not subject to any privilege; (3) the statements were published with the requisite degree of fault; and (4) the statements resulted in damages.  *See West*, 872 P.2d at 1007-08.  Express contends that Plaintiff has failed to make allegations with respect to several of those required elements. The court agrees.

Plaintiff has failed to allege that the statements allegedly made by Express were false, defamatory, and not subject to any privilege.  *See id.*  In addition, Plaintiff has failed to allege that someone at Express published the alleged statements with the requisite degree of fault necessary to hold Express liable for defamation.  *See id.*; *see also Twombly*, 550 U.S. at 555 (providing that "[f]actual allegations [in a complaint] must be enough to raise a right to relief

---

[33]  Docket no. 36 at 3.

[34]  *Id*. at 4-7.

above the speculative level").  For these reasons, Plaintiff's claim against Express for defamation

fails.

### b.  Intentional Infliction of Emotional Distress

Express also argues that Plaintiff has failed to state a claim for intentional infliction of

emotional distress.  To state a claim for intentional infliction of emotional distress, a plaintiff

must establish that:  (1) "the defendant intentionally engaged in some conduct toward the

plaintiff considered outrageous and intolerable in that it offends the generally accepted standards

of decency and morality"; (2) the defendant engaged in such conduct "with the purpose of

inflicting emotional distress or where any reasonable person would have known that such would

result"; and (3) "severe emotional distress resulted as a direct result of the defendant's conduct."

*Russell v. Thomson Newspapers*, 842 P.2d 896, 905 (Utah 1992).

> A court is to determine whether a defendant's conduct may
> reasonably be regarded as so extreme and outrageous as to permit
> recovery.  Outrageous conduct, for purposes of the tort of
> intentional infliction of emotional distress, is conduct that evokes
> outrage or revulsion; it must be more than unreasonable, unkind, or
> unfair.  Additionally, conduct is not outrageous simply because it is
> tortious, injurious, or malicious, or because it would give rise to
> punitive damages, or because it is illegal.

*Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 536 (Utah 2002) (quotations and citations

omitted).

In this case, Plaintiff's factual allegations underlying his claim for intentional infliction of

emotional distress are the same as those underlying his claim for defamation.  Express argues

14

that Plaintiff has failed to make any allegations with respect to the required elements to establish

intentional infliction of emotional distress.  Again, the court agrees.

Plaintiff has failed to allege that Express engaged in some conduct toward plaintiff that is

"considered outrageous and intolerable in that it offends the generally accepted standards of

decency and morality."  *Russell*, 842 P.2d at 905.  In addition, Plaintiff has failed to assert that

the alleged statements were made by someone at Express with the purpose of inflicting emotional

distress on Plaintiff.  *See id*.  Finally, Plaintiff fails to allege any facts that severe emotional

distress resulted from the statements allegedly made by Express.  Instead, Plaintiff makes only

conclusory allegations to that effect, which the court is not required to accept.  *See Witt v.*

*Roadway Express*, 136 F.3d 1424, 1431 (10th Cir. 1998) (providing that when addressing a

motion to dismiss for failure to state a claim, the court must "accept as true all well-pleaded

facts, as distinguished from conclusory allegations").  For these reasons, Plaintiff's claim against

Express for intentional infliction of emotional distress fails.

For the foregoing reasons, and based on Plaintiff's failure to respond to the motions to

dismiss filed by Express, *see* DUCivR 7-1(d) ("Failure to respond timely to a motion may result

in the court[] granting the motion without further notice."), the court concludes that those

motions to dismiss should be granted.

## 2.  Claimetrics

Plaintiff's original complaint and amended complaint assert claims against Claimetrics

for defamation, intentional infliction of emotional distress, and violation of certain privacy

statutes.  Claimetrics argues that all of those claims should be dismissed under rule 12(b)(6).

15

### a.  Defamation and Intentional Infliction of Emotional Distress

Plaintiff's factual allegations underlying his claims against Claimetrics for defamation and intentional infliction of emotional distress are nearly identical to the factual allegations underlying the same claims against Express.  Consequently, the foregoing analysis of those claims against Express applies with equal weight to the claims against Claimetrics.  Based on that analysis, the court concludes that Plaintiff's claims against Claimetrics for defamation and intentional infliction of emotional distress fail.

### b.  Privacy Statutes

Plaintiff asserts claims against Claimetrics for violation of certain privacy statutes.  Claimetrics argues that those claims are without merit.  The court agrees.

The first provision Plaintiff relies upon is Utah Code § 76-9-402.  That statute, which is located in the Utah Criminal Code, provides criminal penalties for privacy violations and cannot be enforced in a private civil action.

Plaintiff also cites an Oklahoma statute that applies only to nursing home residents in Oklahoma.  *See* 63 Okla. Stat. § 1-1918.  Not only does the subject matter of the statute clearly not pertain to the facts of Plaintiff's case, he makes no attempt to explain how or why the statute is applicable.

Finally, Plaintiff cites to federal statutes that are contained in the portion of the United States Code governing crimes and criminal procedure.  *See* 18 U.S.C. §§ 2510-2522.  The chapter in which those provisions are contained deals with the interception of wire, electronic,

and oral communications. *See* 18 U.S.C. §§ 2510-2522.  While one of the provisions does authorize the recovery of civil damages in a private action, such a recovery is authorized only when there is a violation of the chapter.  *See id*. § 2520(a).  Another provision indicates that

> it shall not be unlawful under this chapter . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

*Id*. § 2511(2)(d).

The court concludes that Plaintiff claim under § 2520 is without merit.  Plaintiff has failed to allege that Claimetrics actually intercepted any communications, which is the basic conduct governed by the above-referenced chapter.  *See, e.g.*, *Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508-09 (11th Cir. 1995) (providing that interception of communications is a necessary element of a § 2520 claim).  Moreover, because it undisputed that Claimetrics was a party to all of the alleged communications underlying Plaintiff's claims, the plain language of § 2511(2)(d) renders the chapter inapplicable to Claimetrics with respect to those communications.  For these reasons, Plaintiff's claim against Claimetrics for violation of the above-referenced statutes are without merit.

For the foregoing reasons, and based on Plaintiff's failure to respond to the motions to dismiss filed by Claimetrics, *see* DUCivR 7-1(d), the court concludes that those motions to dismiss should be granted.

### 3. Davis and Performance

Plaintiff asserts claims under Utah law against Davis and Performance for medical malpractice.  In their motions to dismiss, both Davis and Performance argue that Plaintiff's claims should be dismissed because he has failed to comply with the prelitigation requirements of the Utah Health Care Malpractice Act ("UHCMA").  *See* Utah Code §§ 78B-3-401 to -422.

Pursuant to the UHCMA, a "[m]alpractice action against a health care provider" is defined as "any action against a health care provider whether in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to or arising out of health care rendered or which should have been rendered by the health care provider."  *Id*. § 78B-3-403(16).  An action arises out of "[h]ealth care" if it is based on "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement."  *Id*. § 78B-3-403(10).  A "[h]ealth care provider" is defined as

> any person, partnership, association, corporation, or other facility
> or institution who causes to be rendered or who renders health care
> or professional services as a hospital, health care facility,
> physician, registered nurse, licensed practical nurse, nurse-
> midwife, licensed Direct-entry midwife, dentist, dental hygienist,
> optometrist, clinical laboratory technologist, pharmacist, physical
> therapist, physical therapist assistant, podiatric physician,
> psychologist, chiropractic physician, naturopathic physician,
> osteopathic physician, osteopathic physician and surgeon,
> audiologist, speech-language pathologist, clinical social worker,
> certified social worker, social service worker, marriage and family
> counselor, practitioner of obstetrics, or others rendering similar
> care and services relating to or arising out of the health needs of
> persons or groups of persons and officers, employees, or agents of

18

> any of the above acting in the course and scope of their
> employment.

*Id*. § 78B-3-403(12).

Plaintiff's medical malpractice claims against Davis and Performance in this case stem

from injuries he allegedly suffered as a result of health care that was rendered by, or allegedly

should have been rendered by, Davis and Performance.  In addition, both Davis and Performance

are health care providers as defined by the UHCMA.  Therefore, Plaintiff's claims against Davis

and Performance fall within the scope of the UHCMA.

Under the UHCMA, "[a] malpractice action against a health care provider may not be

initiated *unless and until* the plaintiff gives the prospective defendant or his executor or

successor, at least 90 days' prior notice of intent to commence an action."  *Id*. § 78B-3-412(1)

(emphasis added).  In addition, "[t]he party initiating a medical liability action *shall* file a request

for prelitigation panel review with the division within 60 days after the service of a statutory

notice of intent to commence action under [s]ection 78B-3-412."  *Id*. § 78B-3-416(2)(a)

(emphasis added).

Thereafter, "[t]he [Division of Occupational and Professional Licensing] shall provide a

hearing panel in alleged medical liability cases against health care providers."  *Id*. § 78B-3-

416(1)(a).  That panel review is "*compulsory as a condition precedent to commencing*

*litigation*."  *Id*. § 78B-3-416(1)(c) (emphasis added); *see also Malone v. Parker*, 826 P.2d 132,

133 (Utah 1992) (reiterating that panel review "is a compulsory condition precedent to initiating

litigation").

19

Davis and Performance argue that Plaintiff has failed to satisfy the notice and prelitigation requirements mandated by the UHCMA.  Davis and Performance assert that Plaintiff filed both his original complaint and amended complaint without serving a notice of intent on either Davis or Performance and without requesting a prelitigation panel review.  *See id*. § 78B-3-412(1), -416(2)(a).  Davis and Performance also contend that no panel review has been conducted.  *See id*. § 78B-3-416(1)(a), (1)(c).  Based on those assertions, Davis and Performance argue that Plaintiff's claims must be dismissed because he has failed to comply with the UHCMA's compulsory prelitigation requirements.  *See id*. § 78B-3-416(1)(c); *see also Malone*, 826 P.2d at 133.

In response to those arguments, Plaintiff does not deny that he has failed to comply with the prelitigation requirements of the UHCMA.  Instead, Plaintiff asserts that Davis and Performance are attempting to "usurp [f]ederal [l]aws"[35] by forcing Plaintiff to comply with those requirements.  Plaintiff also argues that he should not be required to comply with the UHCMA's prelitigation requirements because they violate the United States Constitution by forcing "a financially destitute pro se plaintiff" to comply with "costly pre-litigation requirements."[36]  Plaintiff further contends that he "has no way of defending [sic] his claims . . .

---

[35]  Docket nos. 23, 62, 67.

[36]  Docket nos. 62, 67.

except through the [f]ederal [c]ourt [s]ystem under federal question[] and diversity jurisdiction."[37]

The court concludes that Plaintiff's arguments are without merit.  While the court recognizes Plaintiff's alleged financial circumstances, he has failed to provide the court with any authority indicating that there is an exception to compliance with the compulsory prelitigation requirements of the UHCMA based those circumstances.  Further, Plaintiff does not dispute that he has failed to comply with those prelitigation requirements for his medical malpractice claims against Davis and Performance.  Therefore, Davis's motion to dismiss and Performance's motion to dismiss should be granted, and Plaintiff's medical malpractice claims against both of those entities should be dismissed.

### IV.  Review of Complaint Under IFP Statute

Although the court has already determined that the Moving Parties' motions to dismiss should be granted, Plaintiff has also asserted a medical malpractice claim against WorkCare that is closely related to the medical malpractice claims he asserted against Davis and Performance.  Pursuant to the authority of the IFP statute, the court will address the sufficiency of that claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Whenever the court authorizes a party to proceed without the prepayment of fees under the IFP statute, the court is required to "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."  *Id*.  In determining

---

[37]     Docket nos. 62, 67.

whether a complaint fails to state a claim for relief under the IFP statute, the court employs the same standard used for analyzing motions to dismiss for failure to state a claim under rule 12(b)(6), as recited above.  *See Bemis*, 500 F.3d at 1217-18.

As with his medical malpractice claims against Davis and Performance, Plaintiff has failed to allege that he has complied with the UHCMA's prelitigation requirements with respect to his claim against WorkCare.  Without such an allegation, Plaintiff's medical malpractice claim against WorkCare fails.  Accordingly, the court concludes that Plaintiff's claim against WorkCare should be dismissed under the authority of the IFP statute for failure to state a claim on which relief can be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## V.  Plaintiff's Diversity Jurisdiction Allegations

As a final matter, and despite the court's conclusion that federal question and supplemental jurisdiction exist in this case, the court will address Plaintiff's allegations with respect to diversity jurisdiction.  Plaintiff has alleged in both his original complaint and amended complaint that diversity jurisdiction exists based, in part, on his allegation that he is a citizen of Hawaii.  However, as previously noted, in a supplemental memorandum submitted to the court,[38] Express and Claimetrics assert that Plaintiff has made sworn allegations in the Hawaii Case concerning diversity jurisdiction that conflict with sworn allegations he has made in this case concerning diversity jurisdiction.

---

[38]  *See* docket no. 68.

22

In Plaintiff's original complaint, which was received by the court on October 30, 2008, and filed on October 31, 2008, he asserts in his jurisdictional allegations that he is a citizen of Hawaii.[39]  Plaintiff also "attest[s] to the truth of" his original complaint "under the [f]ederal and Utah State [l]aws for penalty of perjury."[40]  In his amended complaint, which is dated January 22, 2009, and was filed on January 23, 2009, Plaintiff again asserts in his jurisdictional allegations that he is a citizen of Hawaii[41] and "attest[s] to the truth of" the amended complaint "under the [f]ederal and Utah State [l]aws for penalty of perjury."[42]

Along with their supplemental memorandum, Express and Claimetrics submitted two pleadings Plaintiff filed in the Hawaii Case.[43]  One of those pleadings is dated February 27, 2009, and the other is dated March 6, 2009.[44]  In both of those pleadings, Plaintiff has included the following allegations:

[I]n accordance with 28 U.S.C. [§] 1332:

I, David Webb, declare and state as follows:

---

[39] *See* docket no. 3 at 1.

[40] *Id*. at 16.

[41] *See* docket no. 36 at 1.

[42] *Id*. at 17.

[43] *See* docket no. 68, Exhibits A & B.

[44] *See* docket no. 68, Exhibits A & B.

    1.     I am the Plaintiff in this Case before the Court.  I have personal knowledge of the facts set forth in this Declaration and[,] if called upon to testify[,] could and would do so competently.

    2.     On 28 OCT 2008 and 27 JAN 2009, Plaintiff's COMPLAINT and "FIRST AMENDED" COMPLAINT was [sic] filed before this Court alleging Plaintiff being a citizen of Hawaii based solely on his [s]tate license still being valid in Hawaii.

    3.     However, Plaintiff has not been a resident of Hawaii since leaving on 04 FEB 2006, to care for an elderly parent in Utah.

        I declare under penalty of perjury under the laws of the State of Utah that the above is true and correct.[45]

Notably, Plaintiff has not responded to the above-referenced supplemental memorandum to challenge the portions of the pleadings quoted above.

It is a "well-established rule that diversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam). For purposes of diversity jurisdiction under 28 U.S.C. § 1332, "state citizenship is the equivalent of domicile," and an individual's domicile is the combination of residence or physical presence in a location and an intent to remain there indefinitely.  *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).  Further, "an individual may have only one domicile at a given time for purposes of determining diversity jurisdiction." *Wolfson v. Moss*, No. 2:06-cv-906, 2007 U.S. Dist. LEXIS 71706, at *1 (D. Utah Sept. 26, 2007); *see also, e.g.*, *Cressler v. Neuenschwander*, 930 F. Supp. 1458, 1462 (D. Kan. 1996).

---

[45] *Id.*, Exhibit A at 2, Exhibit B at 2 (emphasis omitted).

The foregoing facts demonstrate that Plaintiff is attempting to have more than one domicile at a time.  Indeed, his pleadings in this case and his pleadings in the Hawaii Case contain contradictory sworn allegations regarding domicile or citizenship for purposes of diversity jurisdiction.  Further, Plaintiff made those contradictory allegations in contemporaneous filings (his original complaint in this case and his original complaint in the Hawaii Case were filed only several days apart in October 2008, and his amended complaint in this case and his amended complaint in the Hawaii Case were filed only several days apart in January 2009).  In the court's view, Plaintiff has attempted to perpetrate a fraud on both this court and the court presiding over the Hawaii Case.

When a plaintiff perpetrates a fraud on the court, it is within the court's inherent powers and discretion to dismiss the plaintiff's complaint as a sanction.  *See, e.g.*, *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1043-44 (10th Cir. 2005).  However, "[b]ecause dismissal is such a harsh sanction, it is appropriate only in cases of willfulness, bad faith, or [some] fault of [the plaintiff]."  *Id*. at 1044 (second alteration in original) (quotations and citations omitted).  In determining whether dismissal is an appropriate sanction, the court should consider:

> "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."

*Id*. (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).  "This list is not exhaustive, nor are the factors necessarily equiponderant."  *Id*.

25

The court turns to considering those factors in this case.  First, all of the Moving Parties have suffered prejudice by expending unnecessary time and money defending against Plaintiff's complaint, which was based, at least in part, on his fraudulent allegations concerning the existence of diversity jurisdiction.  Second, the court concludes that fraudulent allegations in a complaint create a substantial interference with the judicial process.  Third, the court has determined that the contradictory nature of Plaintiff's allegations in this case and the Hawaii Case, which he has failed to explain to the court, impose a high degree of culpability.  The fourth factor is not relevant in this case because the court had no occasion to warn Plaintiff in advance of the filing of this case that including fraudulent allegations in his complaint would likely result in dismissal of his case.  Finally, the court does not believe that lesser sanctions are appropriate in this case, particularly given the court has already concluded that Plaintiff's complaint fails to state any claims upon which relief can be granted.

Based on consideration of the appropriate factors, *see id.*, the court concludes that the apparently fraudulent allegations concerning diversity jurisdiction contained in Plaintiff's original complaint and amended complaint constitute an alternative ground for dismissing this case in its entirety.

### VI.  Motion for Service of Process

The court has concluded that all of the Moving Parties' motions to dismiss should be granted.  The court has also concluded that Plaintiff's complaint fails to state any claims on which relief can be granted and that this case should be dismissed in its entirety.  Based on those

conclusions, it logically follows that the court believes Plaintiff's motion for service of process should be denied.

<u>**CONCLUSION AND RECOMMENDATION**</u>

In summary, **IT IS HEREBY RECOMMENDED:**

1.  Plaintiff's motion for default judgment[46] be **DENIED**.

2.  Plaintiff's motion for appointment of counsel[47] be **DENIED**.

3.  All of the Moving Parties' motions to dismiss Plaintiff's original complaint[48] and Plaintiff's amended complaint[49] be **GRANTED**.

4.  Plaintiff's claims against WorkCare be **DISMISSED** under the authority of the IFP statute for failure to state any claims upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

5.  The apparently fraudulent allegations concerning diversity jurisdiction contained in Plaintiff's original complaint and amended complaint should be considered as an alternative ground for dismissing this case in its entirety.

6.  Plaintiff's motion for service of process[50] be **DENIED**.

---

[46] *See* docket no. 4.

[47] *See* docket no. 30.

[48] *See* docket nos. 7, 9, 17.

[49] *See* docket nos. 39, 41, 53.

[50] *See* docket no. 37.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. *See* 28 U.S.C. § 636(b)(1)(C). The parties must file any objection to this Report and Recommendation within ten (10) days after receiving it. *See id*. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 9th day of September, 2009.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge